# CARL W. BACHERTZ v. HAYES-LUCAS LUMBER COMPANY.[1]

November 5, 1937.

No. 31,312.

[1]Reported in 275 N. W. 694.

172

*Gallagher & Madden* and *Schmitt, Johnson & Farrish,* for appellant.

*C. J. Laurisch* and *Josiah A. Baker,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed in his action to recover damages for alleged breach of warranty. Defendant's blended motion for judgment notwithstanding or new trial was denied. The appeal is from that order.

Plaintiff is and over a period of years has been a resident of Mankato and there engaged in the business of erecting dwellings and other structures. Defendant's business is that of a retail dealer in building materials.

During the spring and early summer of 1924 plaintiff was erecting a two-story dwelling house upon premises owned by him in Mankato. While this was in course of construction defendant's agent, one Murphy, interviewed plaintiff with the object in view of getting him interested in certain material known as "Rocbond" to be used as a plaster or stucco on the outside walls of the building. In his complaint he avers: "That in order to induce plaintiff to purchase and use such material in said building defendant stated and represented to plaintiff that when installed according to specifications prescribed by the maker thereof such material would be satisfactory, permanent and would last forever without requiring repairs"; that one Schultz "had installed said 'Rocbond' material in a number of jobs and was familiar with the specifications and requirements of its maker, and that if plaintiff would employ" Schultz to apply the material "it would be properly applied and that defendant would then guarantee to plaintiff that said material would be permanent and would not require repairs." He further alleges that relying upon these statements and representations so made he entered into a contract with Schultz, who procured from defendant the material mentioned and "applied the same to the outer walls of said building in accordance with specifications therefor furnished"; that after the material had been applied plaintiff informed Schultz that "it was not satisfactory" and that plaintiff

would not pay for same; that thereafter about July 10 defendant's agent and Schultz called upon plaintiff and inspected the work as well as the material; that both of them told plaintiff that the work appeared satisfactory and that the material appeared to be in good condition; that the material was still damp and too fresh to show defects; that it was necessary for such material to harden thoroughly and to stand for some time before defects would show up. Further, the defendant "stated to plaintiff that if plaintiff would pay * * * for said work and material * * * defendant would guarantee to plaintiff that said material would give absolute satisfaction * * * would not crack or loosen, and that if any defect should show up in said material at any time thereafter that defendant would replace such material on said building without cost to plaintiff." Relying upon that guaranty, so plaintiff claims, he paid Schultz for the entire job, and Schultz in turn paid defendant for the material purchased by him for the job. In September, 1933, plaintiff, seeking a homeowner's loan, was visited by appraisers for that organization. Then "for the first time" plaintiff observed that the material had become loosened and cracked and that other defects had arisen "so that said material must be entirely removed and replaced with new stucco in order to put said building in good condition." By reason of the foregoing alleged warranties and breaches thereof, plaintiff claims to have been injured in the sum of $1,500, for which judgment is demanded with costs.

The answer, in addition to tendering the general issue, pleaded laches and the statute of limitations and other defenses not deemed important here in view of what we shall hereafter state. Plaintiff's reply denied "every allegation of new matter."

The evidence discloses plaintiff to be a man of wide experience in the building game. The premises involved were occupied by him ever since the job was finished in June, 1924. Plaintiff then objected to the job, claiming there were many objectionable defects, the stucco "was cracking around the base of the building, there was a flare in the base * * * it was checking in the base." He refused to pay for the job unless a "written guarantee" was furnished. On May 29 defendant wrote the manufacturer of Rocbond about

the matter and received assurance from it that "we wish to assure that we do guarantee absolutely the quality of Rocbond material and we do guarantee that it will perform exactly as we claim for it when applied according to our specifications. Of course we can't guarantee the labor nor the application of the material. If the mechanic will do his part we are ready to guarantee the material." The letter from which quotation is made bears date May 31, 1924. Defendant thereafter wrote Mr. Schultz as follows:

> "Hayes-Lucas Lumber Company
> "Retail Lumber and Coal
> "D. P. Murphy, Manager.
>> "Mankato, Minn., July 10, 1924.

"Mr. Ernest O. Schultz,
  "Mankato, Minn.
"Dear Sir:

"We wish to assure you that the Rocbond material as furnished for Mr. Bachertz' house at 228 Willard Street is guaranteed to give absolute satisfaction when applied according to their specifications, and in case Rocbond is found to be defective in any way The Rocbond Co. have agreed to replace free of any charge to the owner.

> "Yours very truly,
>> "(Signed)  Hayes-Lucas Lumber Co.
>>> "M."

Immediately below and on the same sheet appears the separate guaranty or promise on the part of Mr. Schultz, which reads as follows:

> "Mankato, Minnesota, November 8, 1924.

"I, the undersigned, Ernest F. Schultz, do hereby certify that I am the contractor who did the work in applying the Rocbond stucco to the apartment of C. W. Bachertz at 228 Willard Street, Mankato, Minnesota; and I further certify that said workmanship was done in accordance with the specifications of the Rocbond Company in every respect. he has applied the material on above property the same as all materials that are furnished by the Rocbond Company.

> "(Signed)  Ernest F. Schultz."

This instrument was admitted in evidence as plaintiff's exhibit A.

It is important to remark that the form as originally prepared was changed by Schultz by drawing a line through the words hereinbefore so showing, and immediately following was inserted in pen and ink what follows the stricken portion.

Apparently nothing more happened until the summer of 1929, when a collector for defendant called upon plaintiff to pay a small bill ($31.20) for material purchased by him from defendant in January of that year. Plaintiff then informed the collector that he was not going to pay the bill because the material and workmanship upon the stucco job were defective. On January 19, 1935, plaintiff commenced an action against defendant wherein he alleged amongst other things that defendant had sold and delivered to plaintiff certain building materials known as "Rocbond" to be used in the construction of plaintiff's building; that "to induce plaintiff to purchase said material the defendant then and there falsely and fraudulently represented the said material would give absolute satisfaction when applied according to" the specifications of the Rocbond company; that if Rocbond "was found defective in any way, the same would be replaced free of charge to the owner, meaning the plaintiff; and that the defendant at that time knew, or ought to have known," that the material would not give satisfaction but would become defective within a short time; that the representation so made persuaded plaintiff to purchase the material and that he did so "solely on the faith thereof." He pleaded *in haec verba* the written guaranty hereinbefore quoted. He further therein alleged that the contractor applied the material according to specifications; that later the job "became defective in that the same cracked, loosened, and otherwise did not give satisfaction"; that before the commencement of that action plaintiff had "duly notified the defendant that the said 'Rocbond' material purchased from it and applied to the premises * * * was cracked and loosened and did not give satisfaction, and demanded that defendant replace the same free of any charge to the owner"; that defendant refused to replace or to repair the defects; that the reasonable cost of replacing the defects and to put said premises "in good condition and

the damage to the said premises by reason of" the mentioned defects was $680, and in that amount "with interest thereon since the 1st day of May, 1929," he demanded judgment with costs and disbursements.

That action, so counsel inform us, was dismissed without trial; hence it is unimportant here as obviously it operates neither as a bar nor an estoppel to the prosecution of the present cause.

We deem it unnecessary to discuss or determine the many questions raised on this appeal, because, as we view the case, the statute of limitations, as a matter of law, had run when the present case was begun, and as such we may now dispose of the case upon its merits.

■ The statute of limitations (2 Mason Minn. St. 1927, §§ 9185 and 9191) is one of repose. 4 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 5591. Its general purpose is to "prescribe a period within which a right may be enforced, afterwards withholding a remedy for reasons of private justice and public policy. It would encourage fraud, oppression, and interminable litigation, to permit a party to delay a contest until it is probable that papers may be lost, facts forgotten, or witnesses dead. A statute of limitation is based to a great extent on the proposition that if one person has a claim against another, or in property ostensibly in another's name or possession, it would be inequitable for him to assert such claim after an unreasonable lapse of time, during which such other has been permitted to rest in the belief that no such claim existed." *Id.*, § 5586.

■ It is also a well established rule that the statute "commences to run against a cause of action from the time it accrues—in other words, *from the time an action thereon can be commenced.*" (Italics supplied.) Of course, "when a right depends upon some condition or contingency, the cause of action accrues and the statute runs upon the fulfilment of the condition or the happening of the contingency." Likewise, a "cause of action for breach of contract accrues immediately on a breach, though actual damages resulting therefrom do not occur until afterwards." *Id.*, § 5602.

■ With these principles counsel for plaintiff do not disagree, but they are of opinion that the question as here presented was one

of fact for the jury and that the court properly so submitted it, hence that the verdict must stand. The instruction of the court on this phase is as follows:

"The summons and complaint on file in this court show that this action was commenced on the 14th of February, 1936, by service of the summons and complaint on the defendant on that day. If the plaintiff learned of the breach of guaranty before February 14, 1930, and failed to bring this action within six years from February 14, 1930, he cannot recover. If before the 14th of February, 1930, plaintiff duly notified the defendant that the Rocbond material purchased from them and applied to the premises at 228 Willard Street, Mankato, Minnesota, became defective, was cracked and loosened and did not give satisfaction and demanded that defendant replace the same, he cannot recover in this action because then more than six years elapsed between the time he discovered the alleged breach and the commencement of this action."

In view of this instruction as applied to the facts here presented, the question then is: Does the record sustain the verdict? We think not. Obviously this job was not satisfactory to plaintiff from the moment of its completion, in June, 1924. This action was not commenced until February 14, 1936, almost 12 years later. He then objected to it and he has continued to do so at frequent intervals ever since. He insisted upon getting from Mr. Schultz a warranty and would not pay him unless and until it was furnished. Schultz in turn wanted some assurance from defendant, and defendant in turn wanted assurance from the manufacturer of this product. Clearly, the present cause is founded upon these written warranties (if such they may be labeled) and the related representations made prior thereto, if plaintiff has or ever had any cause at all against defendant. At that very time plaintiff was complaining about the job, that the material used and the entire job as such was faulty and defective. In 1929 he repeated his objections and refused to pay a small bill because and only because of these claimed defects. When he started his action in 1935, he obviously then knew when the cause accrued, else why did he demand interest since

May 1, 1929? In that complaint he definitely stated when in his opinion defects appeared to such extent that he felt justified in demanding $680 as the reasonable cost of making the job conform with his alleged contract of indemnity. To bring about that result he employed an attorney of integrity and ability. His only effort now to limit or discredit what that complaint charged as a basis for recovery is that he did not read it and that it was not verified. Nowhere in this record is there any suggestion that the attorney then employed by him was misinformed or had in any way misstated the facts upon which recovery was sought. As a matter of fact the only vital distinction between that cause and this is that this is founded upon breach of warranty, whereas the other was founded upon fraud and misrepresentation. The claimed wrongs pleaded are the same in both. To anyone reading the present record with an open mind, plaintiff's cause clearly appears to have accrued much more than six years prior to the commencement of this action. His present effort is "mere strategy in judicial proceedings" to avoid the consequence of his long delay.

"Courts do not volunteer the enforcement of statutes of limitation, but they do not refuse to enforce them when they are invoked by parties. They will not aid or encourage parties in their attempts, by 'mere strategy in judicial proceedings,' or by circuitous route of action, to avoid them. They are to be applied alike to all." 4 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 5598.

To sustain the verdict would require us to hold that justice is not only blind but also bereft of reason and common sense as well.

The order is reversed with directions to grant defendant's motion for judgment notwithstanding the verdict.

MR. CHIEF JUSTICE GALLAGHER, having been of counsel in the court below, took no part in the consideration or decision of the cause in this court.