PARK NICOLLET CLINIC, Appellant,

v.

Arlyn A. HAMANN, M.D., Respondent.

No. A10–0658.

Supreme Court of Minnesota.

Dec. 7, 2011.

Kerry L. Middleton, Rhiannon C. Beckendorf, Littler Mendelson, P.C., Minneapolis, Minnesota, for appellant.

David P. Jendrzejek, Taylor D. Tarvestad, Moss & Barnett, P.A., Minneapolis, Minnesota, for respondent.

## OPINION

GILDEA, Chief Justice.

This case arises from an employment relationship between appellant Park Nicollet Clinic and respondent Dr. Arlyn Hamann. The district court dismissed Hamann's complaint against Park Nicollet, holding that the statute of limitations barred his claims. The court of appeals reversed. Because we conclude that Hamann's claims accrued in April 2005, when Park Nicollet committed the allegedly wrongful conduct at issue, we conclude that the statute of limitations bars Hamann's claims and reverse.

This case comes to us on review from a motion to dismiss, so we rely on Hamann's complaint for a recitation of the facts relevant to this dispute. According to the complaint, Hamann began his employment with Park Nicollet in 1974, as a physician in the Obstetrics and Gynecology Department ("Department") of Park Nicollet's Saint Louis Park clinic. Hamann's job duties included seeing obstetrics patients at night and on weekends, which involved working before or after normal business hours.[1]

In 1995, Park Nicollet adopted a Length of Service Recognition Policy ("Policy"), and disseminated a copy to all Department physicians. The purpose of the Policy was "[t]o reward length of service" and to encourage physicians to "continue to practice with Park Nicollet over a long period of time." To receive benefits under the Policy, a physician had to: (1) be at least 60 years old; (2) have "[a]t least 15 years of taking OB [night] call;" (3) be working at least two-thirds of a full-time position; and (4) have the approval of physicians in the "call rotation." Once a physician met the criteria he "would be exempted from night call" and "receive no salary reduction for not taking night call." After the adoption of the Policy, at least one physician exercised his rights under the Policy, and ceased taking night call with no salary reduction.

In early 2004, Hamann informed the Department Chair that he planned to exercise his rights under the Policy after he turned 60 years old later in 2004. The Department Chair confirmed the existence of the Policy and Hamann's eligibility to receive benefits under the Policy. But because a number of Department physicians were on maternity leave at the time, the Department Chair requested that Hamann postpone exercising his rights under the Policy until April 2005, to prevent short staffing in the interim. Hamann agreed.

In April 2005, Hamann again informed the Department Chair that he wished to exercise his rights under the Policy and be exempt from night call with no salary reduction. The Department Chair told Hamann "the Policy no longer existed and would no longer be honored." Hamann alleges that the Department Chair made it

---

1. The parties refer to the treatment of obstetrics patients after normal business hours as "night call" and we adopt that terminology in this opinion.

clear to Hamann in the April 2005 discussion that Hamann "had to continue to take OB night call" and "his salary would be cut if he refused." Based on his conversation with the Department Chair, Hamann alleges that he was "compelled to continue to take OB night call," and that he continued to do so rather than face a decrease in salary. And Hamann alleges that continuing to take night call after April 2005, when he was in his early sixties, "adversely affected his health."

In February 2008, Hamann withdrew from taking night call for health reasons. Because Hamann stopped taking night call, Park Nicollet reduced Hamann's salary. After Park Nicollet reduced his salary, Hamann commenced this action.

In the complaint, Hamann asserts claims for breach of contract and promissory estoppel.[2] Hamann alleges that Park Nicollet breached the Policy by refusing to allow him "to be exempt from night call without salary reduction." Hamann claims damages in the form of lost salary, reduction in benefits, and mental anguish and emotional distress. Hamann also alleges that in reliance on the Policy he did not pursue other employment opportunities available to him, but instead "continued to practice with Park Nicollet for over nine years, including bearing the burden of OB night call." In lieu of answering, Park Nicollet filed a motion to dismiss for failure to state a claim pursuant to Minn. R. Civ. P. 12.02(e), arguing that the statute of limitations had expired.

The district court granted Park Nicollet's motion to dismiss, holding that Hamann's cause of action accrued, and the 2–

year statute of limitations began to run, in April 2005 when Park Nicollet informed Hamann it would not honor its obligations under the Policy. Hamann appealed, and the court of appeals reversed. *Hamann v. Park Nicollet Clinic*, 792 N.W.2d 468 (Minn.App.2010). The court of appeals recognized that "Park Nicollet repudiated [the P]olicy in April 2005." *Id.* at 471. But the court concluded that "each pay period during which Park Nicollet failed to satisfy its obligations under the [P]olicy constitutes a separate alleged breach" that gave rise to a new cause of action. *Id.* Based on its determination that a new cause of action accrued "each time a payment was due but not paid," the court held that the statute of limitations did not bar Hamann's claims. *Id.* at 472. We granted Park Nicollet's petition for review.

■■■ We review "[t]he construction and application of a statute of limitations, including the law governing the accrual of a cause of action," de novo. *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 716 (Minn.2008). The procedural posture of this case—review of the grant of a motion to dismiss—also dictates that we apply a de novo review. *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn.2003) (noting that an appellate court reviews de novo "whether the complaint sets forth a legally sufficient claim for relief"). Finally, in reviewing the decision to dismiss the complaint, we "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Id.*

2. Hamann's complaint also alleged claims for misrepresentation, failure to pay wages in violation of Minn.Stat. § 181.13 (2010), and unjust enrichment. Hamann voluntarily dismissed the misrepresentation and statutory wages claims at the district court, and the

court of appeals affirmed dismissal of Hamann's unjust enrichment claim on other grounds. *Hamann v. Park Nicollet Clinic*, 792 N.W.2d 468, 472–73 (Minn.App.2010). Accordingly, these three claims are not before us.

## I.

The question presented in this case is whether the statute of limitations bars Hamann's breach of contract and promissory estoppel claims. Statutes of limitation are

> based to a great extent on the proposition that if one person has a claim against another . . . it would be inequitable for him to assert such claim after an unreasonable lapse of time, during which such other has been permitted to rest in the belief that no such claim existed.

*Bachertz v. Hayes–Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937) (citation omitted) (internal quotation marks omitted). Requiring parties to bring claims within the limitations period decreases the likelihood that actions will be brought after "papers may be lost, facts forgotten, or witnesses dead." *Id.* at 176, 275 N.W. at 697 (citation omitted) (internal quotation marks omitted).

When addressing a question as to the statute of limitations, we typically first determine which statute of limitations applies to the claims asserted. That determination is unnecessary in this case because the parties agree that the statute of limitations set forth in Minn.Stat. § 541.07(5) (2010) governs each of Hamann's claims. Under this statute, actions "for the recovery of wages" shall be brought within 2 years.[3] Minn.Stat. § 541.07(5). We have consistently applied this statute of limitations period whenever "the gravamen of the action is the breach of an employment contract." *See Portlance*

*v. Golden Valley State Bank*, 405 N.W.2d 240, 243 (Minn.1987).[4]

With the applicable statute of limitations determined, we turn to the question of when the statute began to run. The statute of limitations begins to run on a claim when "the cause of action accrues." Minn.Stat. § 541.01 (2010); *see Bachertz*, 201 Minn. at 176, 275 N.W. at 697. A cause of action accrues when all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim. *Dalton v. Dow Chem. Co.*, 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968). Moreover, "the running of the statute [of limitations] does not depend on the ability to ascertain the exact amount of damages." *Herrmann v. McMenomy & Severson*, 590 N.W.2d 641, 643 (Minn.1999) (footnote omitted); *see also Bachertz*, 201 Minn. at 176, 275 N.W. at 697 (noting that a cause of action for breach of contract accrues at the time of the breach, even if "actual damages resulting therefrom do not occur until afterwards" (citation omitted) (internal quotation marks omitted)).

With these general principles in mind, we turn to the parties' arguments. Hamann argues that his claims did not accrue until February 2008, when Park Nicollet first reduced his salary due to his failure to take night call, and he contends that a new claim accrued with each paycheck Park Nicollet issued thereafter. Park Nicollet contends that Hamann's claims accrued in April 2005, because that is when

---

3. The statute applies a 3–year statute of limitations to "willful" nonpayment of wages. Minn.Stat. § 541.07(5). We need not decide in this case whether the behavior at issue was "willful" under the statute because, as set forth below, even applying a 3–year limitations period, Hamann's claims are time barred.

4. We do not appear to have decided whether Minn.Stat. § 541.07(5) applies to promissory estoppel claims arising from an employment relationship. Given the parties' agreement that this statute applies, we assume, without deciding, that this is also the statute of limitations applicable to Hamann's promissory estoppel claim.

Hamann attempted to invoke the Policy and learned that the Policy was no longer in existence. We agree with Park Nicollet that Hamann's claims accrued in April 2005.

## A.

 Based on the allegations in the complaint, we conclude that Hamann's claims for breach of contract and promissory estoppel would have survived a motion to dismiss for failure to state a claim in April 2005. *Noske v. Friedberg*, 670 N.W.2d 740, 742 (Minn.2003) ("The showing a plaintiff must make in order to survive a motion to dismiss under Minn. R. Civ. P. 12.02(e) is minimal."). In order to state a claim for breach of contract, the plaintiff must show (1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant. *Briggs Transp. Co. v. Ranzenberger*, 299 Minn. 127, 129, 217 N.W.2d 198, 200 (1974).[5] All of these elements existed in April 2005, according to the allegations in the complaint.

As to the first element, the complaint alleges that a contract was formed in 1995, when Park Nicollet adopted the Policy. The complaint alleges that as of April 2005, Hamann met the criteria set out in the Policy, which satisfies the second element of a breach of contract claim. The complaint also alleges the existence of the third element—the breach—as of April

2005. Hamann asserts that in April 2005, Park Nicollet breached the contract when Hamann "asked Park Nicollet to honor its promises and allow him to be exempt from night call without salary reduction." In response to his request, the complaint alleges that "Park Nicollet refused to honor its agreement, declaring that the Policy no longer existed." The allegation of the April 2005 breach is confirmed elsewhere in the complaint when Hamann alleges that he was told in April 2005 "for the first time that the Policy no longer existed[, that it] would no longer be honored," and "that he had to continue to take OB night call and . . . his salary would be cut if he refused."

In sum, the wrongful conduct underlying the breach of contract claim is Park Nicollet's refusal to honor the Policy. This refusal occurred in April 2005, according to the complaint. At that time, Hamann demanded that Park Nicollet perform. He alleges that he met the requirements of the Policy in April 2005 and was therefore entitled to take advantage of the benefits of the Policy (i.e., he could stop taking night call and his salary would not be reduced). According to the complaint, despite Hamann's demand for performance and his satisfaction of the Policy's criteria, Park Nicollet refused to perform. As a result of Park Nicollet's refusal, the complaint alleges that Hamann had to continue taking night call. Because the allegations of the complaint establish that as of April 2005, Hamann's breach of contract claim would have survived a motion to dismiss,

5. We have recognized that the plaintiff may not have to allege that the breach caused damages in order to state a claim for breach of contract. *See Burns v. Jordan*, 43 Minn. 25, 26, 44 N.W. 523, 524 (1890) (determining that where a counterclaim alleged a breach of contract, the court did not need to consider the damages alleged to determine if a claim had been stated because "[t]he answer sufficiently allege[d] a breach of the contract, and upon that alone the defendants are entitled to nominal damages" (citations omitted)); *but see Sloggy v. Crescent Creamery Co.*, 72 Minn. 316, 75 N.W. 225 (1898) (affirming dismissal of a breach of contract claim because the complaint alleged only nominal damages). In any event, the complaint does allege that Hamann suffered damages in April 2005 as a result of Park Nicollet's breach.

the statute of limitations applicable to the claim began to run in April 2005. *See Dalton,* 280 Minn. at 153, 158 N.W.2d at 584.

 The allegations in the complaint likewise establish that as of April 2005, Hamann's promissory estoppel claim would have survived a motion to dismiss. To state a claim for promissory estoppel, the plaintiff must show that (1) there was a clear and definite promise, (2) the promisor intended to induce reliance and such reliance occurred, and (3) the promise must be enforced to prevent injustice. *Olson v. Synergistic Techs. Bus. Sys., Inc.,* 628 N.W.2d 142, 152 (Minn.2001).

With respect to the first element, the promise at issue is the Policy commitment that Hamann could stop taking night call after age 60 and not have his salary reduced. Specifically, the complaint alleges that Park Nicollet's liability on a promissory estoppel theory stems from Park Nicollet's failure to honor its promise to allow Hamann to be "exempt from night call without salary reduction." Hamann alleges that he relied on Park Nicollet's promise and that the promise of the Policy induced him to "continue[ ] to practice with Park Nicollet for over nine years" after the Policy was adopted in 1995. The complaint also alleges that Park Nicollet "should have reasonably expected" that the Policy would "induce action or forbearance on Dr. Hamann's part," satisfying the second element. And, with respect to the third element, the complaint alleges that injustice can be avoided only through enforcement of the Policy. Because the allegations of the complaint establish that Hamann's promissory estoppel claim would have survived a motion to dismiss for failure to state a claim as of April 2005, the statute of limitations began to run on the claim at that time. *See Dalton,* 280 Minn. at 153, 158 N.W.2d at 584.

### B.

Notwithstanding the allegations of the complaint, Hamann argues that his claim is timely for two reasons. First, he argues that "Park Nicollet committed a series of discrete breaches of the Policy, that occurred during each pay period in which Dr. Hamann met the policy requirements but was not compensated in accordance with the Policy." Because he filed this action within 2 years of his receipt of a paycheck in which Park Nicollet had reduced his salary, Hamann argues his action is timely. Second, he argues that Park Nicollet's April 2005 statement that the Policy no longer existed was merely an anticipatory repudiation that did not commence the running of the limitations period. We address each argument in turn.

### 1.

 Hamann argues that his claims continued to accrue with each paycheck he received that did not comply with the Policy. The court of appeals agreed. The court held that "Hamann's claims are not limited to compensation for a single pay period following Park Nicollet's repudiation of its [P]olicy." *Hamann v. Park Nicollet Clinic,* 792 N.W.2d 468, 471 (Minn.App.2010). Rather, under the court's reasoning, "each pay period during which Park Nicollet failed to satisfy its obligations under the [P]olicy constitutes a separate alleged breach" that gave rise to a new cause of action. *Id.* Accordingly, the court held that the statute of limitations did not bar Hamann's claims. In reaching this conclusion, the court relied on our decision in *Levin v. C.O.M.B. Co.,* 441 N.W.2d 801 (Minn.1989). *Hamann,* 792 N.W.2d at 471.

In *Levin,* plaintiff Levin had a contract with his employer, effective September 1981, providing that Levin would be paid, as a commission in addition to his salary, a

portion of the company's annual sales in excess of $15 million. 441 N.W.2d at 802. Levin received a commission check for the year ending August 31, 1982, but received no commission payments in subsequent years. *Id.* at 803. Levin inquired about unpaid commissions in August 1984, and his employer implied that no commissions would be paid. *Id.* In October 1986, Levin brought suit to recover outstanding commissions. *Id.*[6]

Levin's employer moved for summary judgment, arguing the claims were barred under the 2–year statute of limitations in Minn.Stat. § 541.07(5). 441 N.W.2d at 803. We concluded that Levin's complaint claimed "a series of breaches, repeated failures to pay commissions ... each of which breaches could have occurred only at the close or at some date after the close of a contract year." *Id.* Each failure to pay commissions therefore constituted a new cause of action from which the statute of limitations would run. *Id.; see also Botten v. Shorma,* 440 F.3d 979, 980 (8th Cir.2006) (determining that a cause of action for bonuses accrued each time a bonus payment was due under an agreement); *Wood v. Cullen,* 13 Minn. 394, 397 (Gil. 365, 368) (1868) (holding that a separate statute of limitations began to run from each installment of wages when it became due).

*Levin* does not support the court of appeals' conclusion that Hamann's cause of action accrued anew with each paycheck. In *Levin,* each year's obligation, if any, to pay a commission was distinct from that in any other year, and the extent of the employer's obligation could only be determined after the sales year was completed and total sales could be determined. Ac-cordingly, each year in which the employer failed to pay commissions was a separate cause of action "with different accrual dates." *Levin,* 441 N.W.2d at 803.

In contrast to *Levin,* the obligation at issue in this case was not something that Park Nicollet was contractually or otherwise required to perform on an ongoing basis. The wrongful conduct at issue here, according to the complaint, is Park Nicollet's decision to require that physicians over age 60 take night call. Requiring physicians over age 60 to take night call is wrongful only because of the benefits Park Nicollet offered in the Policy. Aside from the promise in the Policy itself, Hamann alleges no other contractual provision or law that would bind Park Nicollet to the night call restriction. Because Park Nicollet revoked the Policy in April 2005, it had no continuing obligation to pay Hamann's original salary after he ceased taking night call in February 2008. *See, e.g., Maher v. Tietex Corp.,* 331 S.C. 371, 500 S.E.2d 204, 208 (S.C.Ct.App.1998) (finding that an employee's cause of action for bonuses accrued when the employer unilaterally changed the bonus contract from one requiring mandatory bonuses to one making bonuses discretionary with the employer). This case is therefore distinguishable from *Levin* and the other cases cited by Hamann in which an employer has a continuing contractual or statutory obligation to pay wages or other benefits that gives rise to a new cause of action each time there is an improper payment. *See, e.g., Figueroa v. D.C. Metro. Police Dep't,* 633 F.3d 1129, 1134–35 (D.C.Cir.2011) (holding that because an employer has an ongoing statutory duty to pay overtime, claims for unpaid overtime brought under the Fair Labor

---

**6.** In *Levin,* the parties disputed the extent of the employer's commission obligation. 441 N.W.2d at 802, 805. Levin argued that the 1981 agreement simply changed the way in which his commissions were calculated. *Id.* at 802. But the employer argued that the point of the 1981 agreement was to phase out the commissions entirely. *Id.*

Standards Act accrue each time an employer fails to pay proper overtime wages); *RDO Foods Co. v. United Brands Int'l, Inc.*, 194 F.Supp.2d 962, 971 (D.N.D.2002) (concluding that a separate wrong occurred each time an employer "failed to pay the management fee as determined by the formula set forth in the management agreement"); *McGoldrick v. DataTrak Int'l, Inc.*, 42 F.Supp.2d 893, 897–98 (D.Minn.1999) (finding the employer had an existing and continuing contractual obligation to pay plaintiff's salary, resulting in accrual of a new cause of action each time wages were due and unpaid).

In contrast to these cases, the complaint here alleges a single breach of an obligation that Park Nicollet owed in April 2005, when Hamann sought performance. According to the complaint, Park Nicollet failed to perform its obligation to allow Hamann to be free from night call without a reduction in salary in April 2005. Park Nicollet's obligation under the Policy did not reappear in February 2008, when Hamann ceased taking night call. That Hamann did not fully appreciate the effects of Park Nicollet's April 2005 breach until some years later does not postpone the accrual of his cause of action based on that breach or transform Park Nicollet's wrongful conduct in April 2005 into a continuing breach of an ongoing obligation that could give rise to separate causes of action.

The rule we apply here has been recognized by several courts. For example in *Tull v. City of Albuquerque*, the court held that the plaintiffs' cause of action accrued when their employer, the City, failed to provide plaintiffs with "a [promised] raise in conjunction with their assumption of expanded job duties," as required under the City's Merit System Ordinance. 120 N.M. 829, 907 P.2d 1010, 1011 (N.M.Ct. App.1995). Although the City's breach

had "continuing consequences in the form of lower paychecks," the court found that the lower paychecks were merely damages resulting from the actionable wrong that was the "City's initial refusal to increase Plaintiffs' salaries." *Id.* at 1013. Therefore, the applicable 3–year statute of limitations barred the claim of the plaintiffs, who had waited 7 years after the change in their job responsibilities before suing. *Id.* at 1012–13.

In *Press v. Howard University*, a doctor claimed that his employer, the University, had breached its employment contract with him by wrongfully suspending him from clinic duties, causing him to lose income from a profit-sharing plan. 540 A.2d 733, 734 (D.C.1988). The court found that "the alleged breach of contract—the suspension—occurred only once." *Id.* at 735. The damages the doctor suffered, although continuing into the future in the form of lost income, all flowed from the one single breach. *Id.* The court therefore concluded that the doctor's claim accrued at the time of the doctor's suspension. *Id.; see also Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 842–43 (8th Cir.2002) (holding that the employer's initial refusal to hire was a single discrete act giving rise to a cause of action, and a new cause of action did not accrue later when the lack of seniority cost the plaintiff a promotion and overtime hours); *Alldread v. City of Grenada*, 988 F.2d 1425, 1431–32 (5th Cir. 1993) (concluding that a single Fair Labor Standards Act violation occurred when an employer coerced firefighter employees to sign a contract agreeing to waive compensation for sleep time, resulting in lower overtime wages); *Taylor v. Gen. Motors Corp.*, 826 F.2d 452, 456 (6th Cir.1987) (determining that a breach occurred and the cause of action accrued when the employer failed to promote plaintiff).

■ As these cases make clear, courts must examine the nature of the wrongful conduct at issue in order to determine when the cause of action accrues. If, for example, the wrongful conduct is the failure to pay wages, a cause of action accrues with each failure to pay wages earned. *See, e.g., Wood,* 13 Minn. at 397 (Gil. at 368). But that is not the wrongful conduct that forms the basis for Hamann's action. The conduct that Hamann alleges is wrongful here is Park Nicollet's refusal to comply with the Policy. This wrongful conduct occurred in April 2005. The reduction of Hamann's salary in February 2008 and thereafter was a consequence of the wrongful conduct but it is not the wrong for which Hamann seeks redress. *See Ariadne Fin. Servs. Pty. Ltd. v. United States,* 133 F.3d 874, 879 (Fed.Cir.1998) (concluding that a claim was time-barred because the claim did "not involve a series of distinct events, each giving rise to an independent cause of action," but rather sought "compensation for repudiation of a contract that promised continuing performance into the future"). Hamann's paychecks therefore do not create separate causes of action with distinct accrual dates.

### 2.

■ Hamann also argues that his claims did not accrue in April 2005 because Park Nicollet's statement in April 2005—that the Policy no longer existed—was an anticipatory repudiation of a future obligation to pay wages. The court of appeals agreed with Hamann's reasoning and concluded that in April 2005 Park Nicollet repudiated a future contractual duty to pay Hamann's original salary when he ceased taking night call. *Hamann,* 792 N.W.2d at 472. We agree with the district court that Park Nicollet's statements in April 2005 do not constitute an anticipatory repudiation.

■ Park Nicollet's April 2005 statements do not constitute an anticipatory repudiation because Park Nicollet's performance was due immediately when Hamann, having satisfied the Policy's eligibility criteria, sought to invoke the benefits of the Policy. Failure to perform under a contract when performance is due establishes an immediate breach. *See Associated Cinemas of Am., Inc., v. World Amusement Co.,* 201 Minn. 94, 99, 276 N.W. 7, 10 (1937). An anticipatory repudiation, however, occurs when a promisor renounces a contractual duty before the time for performance has arrived. *See Wold v. Wold,* 138 Minn. 409, 415, 165 N.W. 229, 231 (1917). Where a party to a contract does nothing more than declare "an intention not to comply with its terms prior to the time the declarant must perform," the statute of limitations does not begin to run. *Levin,* 441 N.W.2d at 804; *accord Matteson v. Blaisdell,* 148 Minn. 352, 355, 182 N.W. 442, 443 (1921). In *Levin,* we held that the employer's statement to Levin that the employer would not pay commissions constituted an anticipatory repudiation of the employer's future obligation to pay commissions. 441 N.W.2d at 804. Because commissions were due to Levin at the end of each year and were based entirely on the sales that occurred during that year, the employer's obligation to pay commissions could not be breached in advance of the sales on which the calculation of commissions were based. The breach could occur only at the end of any individual sales year. *Id.*

The court of appeals found that the facts of this case were analogous to *Levin,* determining that "Park Nicollet had a future obligation to pay or provide specific benefits to Dr. Hamann at certain stated intervals for an indefinite period into the future." *Hamann,* 792 N.W.2d at 472. Claims for benefits continued to accrue,

the court of appeals reasoned, because Hamann continued his employment with Park Nicollet. *Id.* We agree that an employer's declaration of an intention not to perform contractual obligations due in the future does not itself start the limitations period.

But the breach at issue in this case—relieving Hamann from night call without reducing his salary—was not an obligation that would arise at some point in the future; it was an obligation owed to Hamann in April 2005, when Hamann demanded performance. Unlike the obligation to make commission payments at issue in *Levin,* which could necessarily be breached only at the end of each year in which commission payments were earned, Park Nicollet's Policy set out a present contractual obligation. Hamann, having satisfied the eligibility criteria, triggered that obligation when he informed the Department Chair in April 2005 that he wished to "exercise the Policy." And Park Nicollet breached the obligation when the Department Chair declined to allow Hamann to do so. That Hamann did not feel the effects of the breach in the form of a salary reduction until sometime later does not convert Park Nicollet's breach of a presently existing obligation into the repudiation of a future one.[7]

Our characterization of Park Nicollet's performance—as a presently existing obligation—also comports with Hamann's argument that Park Nicollet had a duty "to perform under the Policy the moment Dr.

Hamann's rights in the Policy vested" and breached the Policy by "deny[ing] Hamann the right to be exempt from OB night call." In this way, the Policy is similar to a contract calling for payment on demand. As soon as Hamann had satisfied the conditions of the Policy and "informed the Department Chair that he wished to exercise the Policy and stop taking night call," Park Nicollet had a duty to perform. Failure to perform, therefore, is not an anticipatory repudiation. Instead, the failure to perform established an immediate breach in April 2005 from which the statute of limitations began to run. *See Bannitz v. Hardware Mut. Cas. Co. of Stevens Point, Wis.,* 219 Minn. 235, 237, 17 N.W.2d 372, 373 (1945) (finding that the statute of limitations begins to run on a contractual obligation payable on demand when such demand is made).

For all of these reasons, we hold that Hamann's cause of action accrued, and the statute of limitations began to run as to his claims, in April 2005. Because Hamann filed this action in October 2009, it is barred by the statute of limitations. *See* Minn.Stat. § 541.07(5). We therefore reverse the court of appeals.

Reversed.

---

7. We need not determine in this case whether Hamann's claims would have accrued if Hamann had not satisfied the eligibility criteria in the Policy in April 2005. The complaint alleges that Hamann satisfied the eligibility criteria and so this question is not before us in this case.