STATE OF MINNESOTA

IN SUPREME COURT

A14-1876

Court of Appeals

Dietzen, J.
Dissenting, Anderson, J., Gildea, C.J.

Mary Cocchiarella,

Appellant,

vs.

Filed: August 31, 2016
Office of Appellate Courts

Donald Driggs,

Respondent.

_____

Gary Van Winkle, Andrew P. Schaffer, Galen Robinson, Mid-Minnesota Legal Aid, Minneapolis, Minnesota, for appellant.

Donald Driggs, Spring Park, Minnesota, pro se.

Samuel Spaid, HOME Line, Minneapolis, Minnesota; and

Darryn C. Beckstrom, Benjamin L. Ellison, Lawrence R. McDonough, Dorsey & Whitney LLP, Minneapolis, Minnesota, for amicus curiae HOME Line.

Robin Ann Williams, Mark R. Bradford, Bassford Remele, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Multi Housing Association.

_____

S Y L L A B U S

A tenant who holds the present legal right to occupy residential rental property under a lease or contract satisfies the definition of "residential tenant" under Minn. Stat. § 504B.001, subd. 12 (2014), and therefore has the right to bring an unlawful removal or exclusion petition under Minn. Stat. § 504B.375, subd. 1 (2014).

Reversed and remanded.

O P I N I O N

DIETZEN, Justice.

The question presented in this appeal is whether a person must physically occupy a dwelling in a residential building to qualify as a "residential tenant" under Minnesota's unlawful exclusion or removal statute, Minn. Stat. § 504B.375 (2014). Appellant Mary Cocchiarella brought an unlawful exclusion petition under the statute to enforce her agreement with respondent Donald Driggs to rent an apartment located in Hennepin County. Driggs requested and received the first month's rent and a security deposit, and agreed to rent the residential premises to Cocchiarella. He later refused to deliver physical possession of the premises to her. The housing referee recommended granting Driggs's motion to dismiss, concluding that Cocchiarella did not qualify as a "residential tenant" under the unlawful exclusion statute because she was not physically "occupying" the residential premises, *see* Minn. Stat. § 504B.001, subd. 12 (2014). The district court adopted the referee's decision, and the court of appeals affirmed. For the reasons that follow, we reverse the dismissal and remand to the district court for further proceedings.

2

In late January 2014, Cocchiarella observed a "for rent" sign and phone number attached to the façade of a three-unit residential building. Cocchiarella contacted Driggs, who informed Cocchiarella that all three units were available for rent. When viewing the units, Cocchiarella noticed that Driggs had personal property inside of Unit 3—the unit at issue here—but Driggs assured her that Unit 3 was available for rent. Cocchiarella informed Driggs that she was interested in renting Unit 3, and Driggs "agreed to rent [Unit 3] to [Cocchiarella] at that time."

On February 1, 2014, Cocchiarella went to the premises to determine when Driggs would "fill out paperwork" and she could begin to move in. Driggs told Cocchiarella that "move-in would be a couple of days later" because he needed to varnish the floors. Later that day, Driggs requested that Cocchiarella return on February 3 to sign a lease and that she bring $2,400 in cash for her security deposit and the February rent. Cocchiarella returned to the premises on February 3, paid Driggs $2,400, and expected to move in at that time. Driggs gave Cocchiarella a receipt for her payment, told her that he was ill, and asked her to come back the following day.

When Cocchiarella returned to the apartment the next day, Driggs requested that Cocchiarella obtain a co-signer for her lease. Cocchiarella returned that evening with her roommate, J.B., who completed "a co-signed rental application" with her. Cocchiarella asked Driggs when she could move into the apartment, and Driggs stated that he needed a "couple of days to remove his belongings" before she could move in. Two days later, Cocchiarella and J.B. returned to the premises and again asked Driggs when he would permit her to move in. Driggs "became angry" and "demanded" that Cocchiarella and J.B.

3

leave, which they did. On February 10, Driggs left Cocchiarella a voicemail, stating that she should return to the premises so Driggs could give back the security deposit. After some discussion with Cocchiarella at the apartment, Driggs "changed his mind" and again told Cocchiarella that he would remove his belongings in a couple of days and that she could move in "later that week." Driggs did not offer to return the $2,400 Cocchiarella had given him for the security deposit and February rent payment. On February 11, Cocchiarella left Driggs a voicemail stating that, unless Driggs provided her the keys for immediate move-in, she would file a "lockout petition" with the housing court. Driggs did not give Cocchiarella the keys to the premises.

Cocchiarella filed a petition with the housing court under Minn. Stat. § 504B.375, seeking possession of the apartment on the ground that she was unlawfully excluded from the premises. The housing court referee recommended that Cocchiarella's petition be dismissed, concluding that she was not a "residential tenant" as required under the unlawful exclusion or removal statute, *see* Minn. Stat. § 504B.375, subd. 1(a). Specifically, the referee reasoned that Cocchiarella had not physically occupied the premises, and therefore she was not a "residential tenant" who was "*occupying* a dwelling in a residential building" within the meaning of chapter 504B, *see* Minn. Stat. § 504B.001, subd. 12 (emphasis added). The district court adopted the referee's conclusions in all respects and dismissed Cocchiarella's petition.

The court of appeals affirmed the dismissal, concluding that a person is a "residential tenant" only "if the person actually had taken possession of rental property and had begun residing there before the filing of a petition." *Cocchiarella v. Driggs*, 870

4

N.W.2d 103, 106 (Minn. App. 2015). Because Driggs precluded Cocchiarella from physically occupying the premises, the court of appeals reasoned that Cocchiarella was not a "residential tenant," and therefore could not bring an unlawful exclusion petition under Minn. Stat. § 504B.375. 870 N.W.2d at 107. We granted Cocchiarella's petition for review.

I.

Cocchiarella argues on appeal that she qualifies as a "residential tenant" under Minn. Stat. § 504B.375, and is therefore entitled to recovery of the leased premises. According to Cocchiarella, the present legal right of occupancy is sufficient to qualify as a "residential tenant" under section 504B.375, because actual, physical occupancy of the premises is not required. Driggs responds that absent actual, physical occupancy of the leased premises, Cocchiarella may not bring a petition under the statute.

The interpretation of a statute is a question of law that we review de novo. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). Our review of a district court's decision to grant a motion to dismiss is also de novo. *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 831 (Minn. 2011). In reviewing the grant of a motion to dismiss, we "consider only the facts alleged in the complaint, accepting those facts as true and [construing] all reasonable inferences in favor of the nonmoving party," which in this case is Cocchiarella. *See id.* (quoting *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003)).

The object of all statutory interpretation is to ascertain and effectuate the intention of the Legislature. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012) (citing

5

Minn. Stat. § 645.16 (2014)). In accordance with our canons of interpretation, we construe technical words and phrases "according to [their] special meaning," and other words and phrases according to their "common and approved usage." *Id.*; Minn. Stat. § 645.08(1) (2014). Further, we interpret the statute as a whole, considering the provision at issue "in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). Indeed, we must construe a statute "to give effect to all of its provisions." Minn. Stat. § 645.16 (2014). When interpreting a statute, our first step is to "examine the statutory language to determine whether the words of the law are clear and free from all ambiguity." *Staab*, 813 N.W.2d at 72. When the language of a statute is clear, we apply the plain language of the statute and decline to explore its spirit or purpose. *In re Welfare of J.J.P.*, 831 N.W.2d at 264.

At this stage of the proceedings, we accept as true Cocchiarella's contentions in her petition: that she entered into an oral lease with Driggs for the residential premises before February 1, 2014, was told on February 1 that she could move in "a couple of days later," paid Driggs the security deposit and February rent on February 3, and was thereafter unlawfully excluded from exercising her legal right to occupy the premises.[1] *See Park*

---

[1]    The dissent concedes that an oral lease existed but concludes that the agreement did not specify the effective date of the lease, and therefore Cocchiarella did not have the present legal right of occupancy. In doing so, the dissent ignores the allegations of the complaint, which our case law requires that we assume to be true. "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). Cocchiarella's theory is that she had the legal right of occupancy when she petitioned the housing court for relief on February 12, 2014. This theory is possible based on the facts stated in

6

*Nicollet Clinic*, 808 N.W.2d at 831. The only issue for us to decide is whether Cocchiarella satisfied the definition of "residential tenant" under Minnesota Statutes chapter 504B when she held the present legal right to possess the premises but did not hold a key or otherwise physically occupy the premises.

Chapter 504B sets forth the remedies available to tenants for the violation of a lease covered by the chapter. *See* Minn. Stat. § 504B.001, subd. 14(3). Unlawful removal or exclusion from residential rental property is one such violation addressed by chapter 504B. *See* Minn. Stat. § 504B.375. Specifically, section 504B.375 sets forth the procedures by which a "residential tenant" may "recover possession" of residential rental property from which the residential tenant was actually or constructively removed or excluded. *Id.*, subds. 1, 5. Under chapter 504B, a "residential tenant" is defined as

> a person who *is occupying* a dwelling in a residential building under a lease or contract, whether oral or written, that requires the payment of money or exchange of services, all other regular occupants of that dwelling unit, or a resident of a manufactured home park.

Minn. Stat. § 504B.001, subd. 12 (emphasis added).

Driggs does not dispute that Cocchiarella has satisfied the "payment of money" requirement for qualifying as a "residential tenant." The crux of the dispute is whether Cocchiarella "is occupying" the leased premises within the meaning of the statute. The word "occupying" derives from the verb "to occupy," which has a variety of meanings depending on the context in which it appears. Specifically, the dictionary definition of

_____

Cocchiarella's petition that she paid rent for February 2014, was told she could move in "a couple days" after February 1, and was excluded from the apartment during that month.

7

"occupy" includes: "1. To fill up (time or space)"; "2. To dwell or reside in"; "3. To hold or fill (an office or a position)"; "4. To seize possession of and maintain control over by or as if by conquest"; and "5. To engage or employ the attention or concentration of." *The American Heritage Dictionary of the English Language* 1215 (4th ed. 2000). The derivative word "occupancy" is defined as "[t]he act, state, or condition of *holding*, possessing, or residing in or on something; actual possession, residence, or *tenancy*, esp. of a dwelling or land"; and "[t]he period or term during which one owns, *rents*, *or otherwise occupies* property." *Occupancy*, *Black's Law Dictionary* (10th ed. 2014) (emphasis added). "Hold[ing]," in turn, can be defined as "[t]o be the legal possessor of," lending some support to an interpretation of "occupying" that includes legal possession. *The American Heritage Dictionary of the English Language* 836 (4th ed. 2000).

These varied dictionary definitions, by themselves, do not resolve the question of whether the phrase "is occupying" refers only to physical occupancy, or whether it also includes the present legal right of occupancy. When a word has a variety of meanings, we examine the context in which the word appears. *See Spaeth v. Hallam*, 211 Minn. 156, 158, 300 N.W. 600, 601 (1941) (indicating that when a word and its derivatives have a variety of meanings, context is crucial). Both the statutory and legal context of the phrase "is occupying" support an interpretation that includes not only physical occupancy, but also the legal right of occupancy.

The context in which "is occupying" appears in the statute supports an interpretation that the phrase includes the present legal right to occupy. Specifically, the phrase "is occupying" refers to "a dwelling in a residential building under a lease or contract." Minn.

8

Stat. § 504B.001, subd. 12. Chapter 504B defines a "lease" as "an oral or written agreement *creating a tenancy* in real property." *Id.*, subd. 8 (emphasis added). A tenancy is commonly understood to mean the "[p]ossession or *occupancy* of lands, buildings, or other property *by title, under a lease, or on payment of rent*." *The American Heritage Dictionary of the English Language* 1782 (4th ed. 2000) (emphasis added); *accord Tenancy*, *Black's Law Dictionary* (10th ed. 2014). Thus, under chapter 504B, a lease agreement creates a tenancy, which includes the legal right of occupancy by title, lease, or payment of rent. A residential tenant who "is occupying a dwelling" under "a lease or contract" therefore includes one who has the legal right of occupancy.[2]

Moreover, the common law meaning of the phrase "is occupying" in the context of the landlord-tenant relationship supports this interpretation. The creation of the landlord-tenant relationship involves the transfer of possession and occupation of the leased premises. At common law, a landlord-tenant relationship can be created orally, and requires only that the *right* to present possession of the premises be transferred from the landlord to the tenant. Restatement (Second) of Prop.: Landlord and Tenant §§ 1.2, 2.1

---

[2]     Amicus curiae Minnesota Multi Housing Association (MMHA) and the dissent argue that interpreting "occupying" to include the legal right of occupancy renders the subsequent phrase "under a lease or contract" redundant. We disagree. The phrase "under a lease or contract" specifies the basis by which a "residential tenant" holds the present occupancy rights to the residential rental property. For example, a tenant who is physically occupying the premises but *not under a lease or contract*, such as an adverse possessor, is not a "residential tenant" under the statute. Likewise, a tenant who has a lease or contract with an effective date *in the future* does not have a present right to legally or physically occupy the premises, and therefore is not a residential tenant under the statute. As discussed above, this specification is consonant with the creation of a tenancy at common law.

(Am. Law Inst. 1977); *see Gates v. Herberger*, 202 Minn. 610, 612, 279 N.W. 711, 712 (1938) (noting that "*[a]ny words* that show an intention of the lessor to divest himself of the possession, and confer it upon another, but in subordination of his own title, is *sufficient*" to create a tenancy (emphasis added)); *State v. Bowman*, 202 Minn. 44, 46, 279 N.W. 214, 215 (1938) (noting that a "tenant is one who holds or possesses lands or tenements by any kind of right or title"); *see also Fisher v. Heller*, 174 Minn. 233, 236, 219 N.W. 79, 80 (1928) (indicating that a tenancy was created solely from the payment and acceptance of monthly rent); *Thompson v. Baxter*, 107 Minn. 122, 123-25, 119 N.W. 797, 797-98 (1909) (noting that a tenancy can be created either by a lease agreement or by implication of law). Consequently, the right of possession is transferred when the lease agreement gives the tenant control over the property and the power to exclude all others.[3] Restatement (Second) of Prop.: Landlord and Tenant § 1.2 (Am. Law Inst. 1977); *see also Goodwin v. Clover*, 91 Minn. 438, 439-40, 98 N.W. 322, 323 (1904) (describing the tenant's right as the "right to occupy" and the "superior right to the possession of the land").

We conclude that a tenant who holds the present legal right to occupy residential rental property pursuant to a lease or contract satisfies the definition of "residential tenant" under Minn. Stat. § 504B.001, subd. 12. Therefore, upon the effective date of a lease

---

[3]  "Possession" is defined as "[t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object." *Possession*, *Black's Law Dictionary* (10th ed. 2014). The phrase "recover possession," in Minn. Stat. § 504B.001, subd. 4, logically includes the legal right to recover possession.

agreement, a tenant has the right to bring an unlawful removal or exclusion petition under Minn. Stat. § 504B.375, subd. 1. Two primary reasons support our conclusion.

First, the word "occupying" has a definite and well-understood special or technical meaning in the context of the landlord-tenant relationship. *See Staab*, 813 N.W.2d at 72; *In re Pamela Andreas Stisser Grantor Trust*, 818 N.W.2d 495, 502 (Minn. 2012); *see also State v. Rick*, 835 N.W.2d 478, 484-85 (Minn. 2013) (concluding that a technical meaning was reasonable given the statutory context). The dictionary definitions of "occupy," the common law, and the meaning of the words "occupancy" and "tenancy" in the landlord-tenant context consistently refer to both physical occupancy and to the legal right of occupancy under a residential lease.

Second, Driggs's and the court of appeals' proposed interpretation, which deems physical occupancy a condition precedent to qualifying as a "residential tenant" under chapter 504B, is unreasonable.[4] This interpretation not only adds a physical occupancy requirement that does not exist at common law, but also conflicts with other provisions of

---

[4] The dissent attempts to minimize its physical possession theory by alleging physical possession of the keys is sufficient. The dissent's theory is unreasonable and unsupported by law. When a tenant has the legal right of occupancy, there is no reason why she must present physical evidence such as possession of the keys or placement of items within the premises to exercise her legal rights, nor do such items establish the existence of her legal rights. For example, if a landlord unlawfully "locks out" a resident by throwing her things away and changing the locks on the door, the tenant would no longer be able to show evidence of a key or items in her home, and would not qualify as a "residential tenant" under the dissent's interpretation of the statute. Further, if a landlord accepts money for rent but refuses the tenant the key well after the effective date of the lease, the tenant would not qualify as a "residential tenant" under the dissent's interpretation. Conversely, under the dissent's theory, a tenant need only show a key that purportedly opens the door to the premises in question in order to qualify as a "residential tenant."

11

chapter 504B. For example, a consequence of the interpretation proposed by Driggs and the court of appeals is that a tenant who, prior to move-in, discovers a severe housing code violation—such as noxious conditions or the lack of heat or running water—would not qualify as a "residential tenant" in order to bring a tenant's remedies action in district court, Minn. Stat. § 504B.395, subd. 1(1). Our interpretation extends the remedies under the statute to a tenant who holds the present legal right to occupy residential rental property pursuant to a lease or contract.

A physical occupancy requirement is also in conflict with the definition of "residential building." Minn. Stat. § 504B.001, subd. 11. Specifically, a "residential building" includes "(1) a building used in whole or in part as a dwelling" as well as "(2) an *unoccupied* building which was *previously used* in whole or in part as a dwelling and which constitutes a nuisance under section 561.01." *Id.* (emphasis added). A "residential tenant" within the meaning of subdivision 11(2) therefore includes a "person who is *occupying* a dwelling in [a building that is *unoccupied* due to a nuisance]." *Id.*, subds. 11, 12 (emphasis added). The only way an individual can contemporaneously "occupy" an "unoccupied" building is if "occupy" in the former sense denotes legal occupancy of the premises and in the latter sense denotes the absence of physical occupancy due to conditions constituting a nuisance. Thus, the most natural and reasonable meaning of "is occupying" in the context

12

of a landlord-tenant relationship incorporates not only physical occupancy, but also the present legal right of occupancy under a lease.[5]

For the foregoing reasons, we reverse the dismissal of the petition and remand to the housing court for further proceedings.

Reversed and remanded.

---

[5] The dissent and MMHA argue that policy considerations—discouraging false or harassing claims—require us to interpret the phrase "residential tenant" as incorporating a physical occupancy requirement. We disagree. First, the dissent erroneously explores legislative intent, including policy arguments, contrary to our canons of statutory interpretation. Because the statute is not ambiguous, the court is precluded from exploring the spirit or purpose of the law. Minn. Stat. § 645.16; *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010). Second, the unlawful exclusion or removal statute already includes various protections against abuses by those claiming to be "residential tenants." Courts are not empowered to grant relief simply because a petitioner believes she has been wrongfully excluded. On the contrary, a petitioner must provide a "verified" petition or affidavit providing a "specific" statement of facts that "clearly" establishes the "unlawfulness" of the exclusion or removal from the premises. Minn. Stat. § 504B.375, subd. 1(b)(2), (c). If a petitioner fails to do so, the judicial officer can, and should, deny the immediate possession requested. In the event that immediate possession is wrongfully granted, a landlord has a clear, speedy, effective, and equivalent remedy. Specifically, if possession by the petitioner is wrongful, a landlord may obtain a dissolution of the order; obtain an equivalent writ of eviction; and recover costs, damages, and fees caused by the tenant's wrongful possession. *Id.*, subd. 2. This ability to recover costs, damages, and fees protects landlords by dissuading those with false, harassing, or even tenuous claims from obtaining wrongful possession of residential properties.

13

DISSENT

ANDERSON, Justice (dissenting).

Minnesota's lockout statute applies only to the "actual or constructive removal or exclusion of a residential tenant." Minn. Stat. § 504B.375, subd. l(a) (2014). The phrase "residential tenant" is defined as follows:

> "Residential tenant" means a person who *is occupying* a dwelling in a residential building under a lease or contract, whether oral or written, that requires the payment of money or exchange of services, all other regular occupants of that dwelling unit, or a resident of a manufactured home park.

Minn. Stat. § 504B.001, subd. 12 (2014) (emphasis added).

The housing court, the district court, and the court of appeals all determined that, based on the plain and unambiguous meaning of the word "occupying" in section 504B.001, subdivision 12, a "residential tenant" is an individual who has actually taken possession of a residential dwelling under a lease or contract. *See Cocchiarella v. Driggs*, 870 N.W.2d 103, 106 (Minn. App. 2015). Although Cocchiarella and Driggs allegedly had an oral lease agreement,[1] Cocchiarella never occupied the leased dwelling, as she explicitly admitted before the housing court. She never gained actual possession by any means—she

---

[1]    Cocchiarella alleged that she had an oral lease agreement with Driggs, as shown by a receipt stating: "Deposit & 1st month rent." Driggs's position is that there was no lease agreement and that he requires applicants to pay a security deposit and first month's rent with an application, which is returned if an application is denied. Cocchiarella does not allege that a written lease agreement was ever signed.

As the court correctly observes, because Cocchiarella's appeal comes to us following a Rule 12 dismissal, at this stage we must presume the allegations in Cocchiarella's petition to be true. *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 831 (Minn. 2011). Therefore, we presume that there was an oral lease agreement.

never obtained a key, entered the dwelling, or deposited any of her belongings. Her only connection to the dwelling was the oral lease agreement. Under that agreement, she never even gained legal possession, as the agreement did not specify any lease terms—including, most importantly, the effective date of the lease agreement. Therefore, all three courts that have considered Cocchiarella's claims have concluded that the lockout statute does not apply because she never took actual possession of the residential dwelling.

But the court has now determined that the plain meaning of "occupying" under section 504B.001, subdivision 12, merely requires a "present legal right" to actual possession of the residential dwelling. Such "present legal possession," under the court's rule, may be established by the effective date of a lease agreement, even if a tenant never gained actual (or "physical") possession. The court's reading of the word "occupying" is not reasonable. Rather, for the reasons expressed below, the plain and only reasonable meaning of the word "occupying," as used in section 504B.001, subdivision 12, requires a "residential tenant" to have actual, physical possession of the residential dwelling under a lease or contract. Therefore, the lockout statute is inapplicable to Cocchiarella, who never "occup[ied]" the dwelling that was allegedly subject to an oral lease agreement with Driggs. For these reasons, I respectfully dissent.

The first step in statutory interpretation is to determine whether, on its face, the statute is ambiguous. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). A statute is ambiguous only when it is "subject to more than one reasonable interpretation." *Id.* (citation omitted) (internal quotation marks omitted). If a statute is not ambiguous, we interpret the words of the statute according to their plain and ordinary

meaning. *See* Minn. Stat. § 645.08(1) (2014) (requiring that statutory words be interpreted "according to their common and approved usage"); *Hous. & Redevelopment Auth. of Duluth v. Lee*, 852 N.W.2d 683, 690 (Minn. 2014).

I disagree with the court that the word "occupying" is a technical word subject to a variety of meanings depending on context because it has one reasonable plain meaning. As the other courts involved in this case have concluded, the common and ordinary meaning of "occupying" refers to actual, physical possession or residence, not merely a legal right to possession. This is shown by definitions from numerous, common dictionaries. *E.g.*, *Webster's Third New International Dictionary Unabridged* (3d ed. 2002) (defining "occupy" as "to take up residence in : settle in"; "to fill up (a place or extent) . . . <the center of the house was occupied by a magnificent mahogany staircase>"; and "to hold possession of <occupied a ridge from which they dominated the crossroads>"); *Merriam-Webster's Collegiate Dictionary* (11th ed. 2009) (defining "occupy" as "to take up (a place or extent in space) <this chair is *occupied*> <the fireplace will [occupy] this corner of the room>"); *The American Heritage Dictionary of the English Language* (5th ed. 2011) (defining "occupy" as "[t]o fill up" and "[t]o dwell or reside in (an apartment, for example)"); *Oxford American Dictionary* (3d ed. 2010) (defining "occupy" as to "reside or have one's place of business in (a building)"; and to "fill or take up (a space or time): *two long windows occupied almost the whole of the end wall*"). Applying these definitions, the word "occupying" in section 504B.001, subdivision 12,

plainly requires a "residential tenant" to have physical possession of the leased premises.[2]

But the court determines that the plain meaning of "occupying" under section 504B.001, subdivision 12, merely requires a "present legal right" to possession of the premises. Under the court's rule, a person may establish such "present legal possession" by proof of the effective date of a lease agreement, even if the person never actually possessed the dwelling.

To reach this conclusion, the court does not rely on the ordinary definitions of "occupy," as cited above. Rather, the court recites ordinary definitions, concludes they "do not resolve the question of whether the phrase 'is occupying' refers only to physical occupancy," and then appears to rely in part on technical definitions from *Black's Law Dictionary* and the creation of the landlord-tenant relationship at common law. In some cases, we have relied on *Black's Law Dictionary* as a useful aid in statutory interpretation. *See Goodman v. Best Buy, Inc.*, 777 N.W.2d 755, 759 n.2 (Minn. 2010). As a general rule, however, we are required to interpret statutory words "according to their *common* and approved usage." Minn. Stat. § 645.08(1) (emphasis added). As an exception, our rules of construction allow us to rely on technical definitions and ascribe a special meaning to "technical words . . . and such others as have acquired a special meaning." *Id.*; *see State v.*

---

[2]    I agree with amicus curiae Minnesota Multi House Association that continuous physical presence in the dwelling is not necessary—even physical access or control, such as being provided with a key, or being allowed to enter the dwelling to deposit belongings, is sufficient to satisfy the plain meaning of "occupying." But that did not occur here. Cocchiarella was never given a key, never entered the dwelling, and never deposited belongings; her *only* connection to the dwelling was the oral lease agreement, which did not include an effective date.

*Rick*, 835 N.W.2d 478, 484 (Minn. 2013) ("While we generally interpret statutory words according to their common meaning, our textual canons of interpretation provide that technical words and phrases . . . are construed according to [their] special meaning." (quoting *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012))); *State v. Wertheimer*, 781 N.W.2d 158, 162-63 (Minn. 2010) ("We construe words in statutes consistent with their common usage, unless those words have a different technical meaning in context."). Thus, we may deviate from an ordinary meaning only if we determine that a statutory word is used in a "technical" sense or has acquired a "special" meaning. *See, e.g.*, *Lee*, 852 N.W.2d at 690-91; *Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 708 (Minn. 2013). Whether a word is used in a technical sense or has acquired a special meaning depends on the statute's language and its context. *See, e.g.*, *Lee*, 852 N.W.2d at 691 ("In deciding whether words in a statute have a technical meaning or an ordinary meaning, we look at the context in which the phrase appears."); *Rick*, 835 N.W.2d at 484; *Wertheimer*, 781 N.W.2d at 162-63.

Here, there is no indication that the word "occupying" is used in a technical sense or has acquired a special meaning according to the language and context of section 504B.001, subdivision 12. "Occupying" is hardly a technical or legalistic word. And the context in which this word appears shows that a common and ordinary meaning is intended—i.e., actual, physical possession of a residential dwelling. The subsequent phrase in this provision, "under a lease or contract," Minn. Stat. § 504B.001, subd. 12, accounts for the technical, legal aspect of the residential tenancy: obtaining legal rights to the dwelling by a lease agreement. It is unreasonable to assume that the Legislature

intended the word "occupying" to have the same technical meaning.  In sum, nowhere does the statutory language demonstrate that the Legislature intended a specialized, technical meaning of the word "occupying" that encompasses a tenant's mere "present legal right" to possess a dwelling, rather than its ordinary meaning, which requires actual possession of the dwelling.

Additionally, the court's present-legal-possession approach to defining "occupying" is unreasonable because it violates our rule against surplusage.  This rule of statutory construction requires us to "give effect to all [of a statute's] provisions," Minn. Stat. § 645.16 (2014), so that "no word, phrase, or sentence [is] deemed superfluous, void, or insignificant," *Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 33 (Minn. 2015) (quoting *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000)); *see Goodman*, 777 N.W.2d at 758 ("Every word [in the statute] should be given effect.").  Here, a residential tenant is defined as a "person who *is occupying* a dwelling in a residential building *under a lease or contract . . . .*"  Minn. Stat. § 504B.001, subd. 12.  If, as the court concludes, a person becomes a "residential tenant" merely through "present legal possession" by executing a lease agreement, then the phrase "is occupying" is given no effect and violates the rule against surplusage.  The only reasonable plain meaning of section 504B.001, subdivision 12, which gives effect to all its language and does not render any word or phrase superfluous, is that a "residential tenant" must have *both* physical possession (by actually "occupying" the dwelling) *and* a legal right to possess the dwelling by reason of an executed lease agreement ("under a lease or contract").

The court's decision also relies incorrectly on the common law meaning and the

dictionary definition of "tenancy" to define "occupying." Because the definition of a "residential tenant" is provided by statute, under section 504B.001, subdivision 12, we must look solely to that statutory definition to determine whether a residential "tenancy" exists for the purpose of applying the lockout statute, rather than turning to the common law of tenancies and landlord-tenant relationships or dictionary definitions. *See State v. Schmid*, 859 N.W.2d 816, 820 (Minn. 2015) ("We do not turn to the common law definition of a word if the statute provides its own definition."); *State v. Koenig*, 666 N.W.2d 366, 373 (Minn. 2003) ("[U]nder a plain meaning analysis, we must examine the definition given by the statute for the term. . . . [W]e do not rely on [the dictionary] definition of [a word when] the statute provides a definition."). It is not reasonable to ascribe a common law meaning or dictionary definition to a "residential *tenancy*" when the Legislature has provided a statutory definition for a "residential *tenant*." Under the lockout statute, a residential "tenancy" by a "residential tenant" is established, of course, only if the statutory definition of "residential tenant" is satisfied. Without a "residential tenant," there can be no residential "tenancy," and vice versa.

Under the court's present-legal-possession approach, the "most natural and reasonable meaning of 'is occupying' " *extends* to the present legal right to occupy. *Supra* at 12. Under my approach, the residential tenancy begins at actual possession—that is, when a tenant "is occupying" the premises. A person will not always become a "residential tenant" immediately, at the time of entering into a residential lease agreement. "Present legal possession" is not necessarily established immediately when a lease agreement is executed. Lease agreements usually set a future date of occupancy, i.e., the "move-in"

date. Although at common law a landlord-tenant *relationship* is created when the right to possession of the premises is transferred from the landlord to the tenant, before the move-in date, the prospective tenant does not yet have the present legal right to occupy the dwelling, as the court's approach requires. Indeed, before the move-in date, a previous tenant is often still legally occupying the dwelling, despite the execution of a lease agreement with a new prospective tenant that includes a future move-in date. The definition of "residential tenant" under section 504B.001, subdivision 12, is not satisfied until a tenant "*is* occupying" the dwelling and not merely "will be occupying in the future" under a lease agreement.

Thus, under either approach, typically there will be some period between executing the lease agreement and becoming a "residential tenant" with standing under the lockout statute. And as a practical matter, it is noteworthy that "legal possession" and "actual possession" often will be established the same day—the move-in date arrives ("legal possession"), and the tenant picks up the keys and moves in ("actual possession"). Any gap in time between obtaining "present legal possession" and "actual possession" of a dwelling is minimal. Once the two elements are obtained, the tenant need not remain continuously present to initiate an action or report a violation under the lockout statute—merely obtaining physical access or control, e.g., picking up the keys, is sufficient.

Further, the court's hypothetical about severe violations of housing regulations before the move-in date, *see* Minn. Stat. § 504B.395, subd. 1(1) (2014), is misplaced. First, as I discuss above, a prospective tenant's "move-in" date, as specified in the lease agreement, must arrive before even "legal possession" exists. A "legal right" to occupy a

dwelling cannot exist before the move-in date arrives. Thus, even under the court's present-legal-possession approach, a prospective tenant must wait until the move-in date to have standing as a "residential tenant" to allege a housing-code violation. Second, under my actual-possession approach, when the move-in date arrives and a housing-code violation still exists, the tenant need not remain continuously present in the dwelling with such a severe violation. Rather, as explained above, to have standing as a "residential tenant," physically "occupying" the dwelling, the tenant need merely have physical access or control, which exists, for example, as soon as the prospective tenant accepts keys from the landlord to access the dwelling.

As a practical and policy matter,[3] the court's decision introduces a host of potential problems and is inconsistent with the purpose of the lockout statute. Minnesota's lockout statute provides an extraordinary remedy to tenants, which is appropriate only for the extraordinary circumstances the statute was intended to protect. The lockout statute is designed to provide expeditious, summary *ex parte* relief (i.e., without an opportunity for the landlord to object or respond before relief is granted) for residential tenants who are dispossessed (e.g., locked out) of the homes that they actually occupied. Given the extraordinary nature of this relief, the Legislature limited the remedies to dispossessed

---

[3] The court's assertion that I erroneously explore the purpose of the law is misplaced. It is true that when language in a statute is unambiguous, the court generally cannot examine policy justifications or explore the spirit or purpose of the law. However, here the Legislature included its purpose within the text of the statute, Minn. Stat. § 504B.375, subd. 5 (2014), and "[w]hen the words of a law … are clear and free from all ambiguity, the letter of the law shall not be disregarded." Minn. Stat. § 645.16. In the lockout statute, the purpose of the statute is the letter of the law.

tenants who were actually *"occupying"* a residential unit by physical presence or control—and not those who merely claim a present legal right of occupancy under a disputed lease agreement. That the landlord has "a clear, speedy, effective, and equivalent remedy" should not permit the court to interpret the phrase "is occupying" such that landlords would now be required to invoke this remedy more frequently. The circumstances of this case, which essentially presents a contract dispute, are better suited for other, less extraordinary legal avenues, such as a civil suit for specific performance of a contract, in which both parties may be heard. In the two decades since the lockout statute was enacted, there is no reported decision from a Minnesota court (including the other courts in this case) ever allowing a lockout petition to proceed on the basis of a disputed lease agreement and no actual occupation of a residential dwelling.

Finally, the mere requirement of "present legal possession" to bring a lockout petition introduces a host of potential problems, especially in potential simultaneous "occupancy" disputes. For example, there is a disputed lease agreement involving two tenants, who both allege the right to occupy the same unit: could each tenant bring an *ex parte* lockout petition for summary relief? Even worse, there is a dispute about the move-in date provided in a lease agreement and the previous tenant is physically occupying the unit. Could the new prospective tenant bring a lockout petition when his or her alleged move-in date arrives, requesting summary *ex parte* eviction of the previous tenant who

claims a legal right to continue occupying, and is *actually* living in, the apartment?[4]  Such controversies are better suited for a civil lawsuit in which both parties are heard and disputes of factual and contractual issues may be resolved.  An actual-possession approach avoids the threat of simultaneous occupancy because only one party has standing to bring a lockout petition based on current, physical possession of the residential dwelling.

For the above reasons, the only reasonable plain meaning of "occupying," as used in section 504B.001, subdivision 12, requires a "residential tenant" to have actual, physical possession of a residential dwelling under a lease or contract.  Therefore, the lockout statute is inapplicable to Cocchiarella, who was never "occupying" the residential dwelling that was subject to an alleged oral lease agreement.  For these reasons, I respectfully dissent.


GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Anderson.

---

[4]  A similar threat arose here.  Although Cocchiarella knew that Driggs still physically occupied the allegedly leased dwelling, Cocchiarella's counsel proposed, at the *ex parte* hearing on the lockout petition, that the referee "enter an order directing . . . that Driggs must vacate the property."  Had the referee agreed and issued such an order, Driggs would have been summarily evicted from his own dwelling, based on a disputed oral lease agreement, with no opportunity to respond before the order was issued, despite his position that no lease agreement was made and the lack of actual occupancy by Cocchiarella.